# IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | |
|---|---|
| JACQUELINE TANNER,         ) | |
|        ) | |
|     **Plaintiff,**       ) | |
|        ) | |
|    **v.**            ) | No. 3:17-CV-3039 |
|        ) | |
| **BOARD OF TRUSTEES OF THE**   ) | |
| **UNIVERSITY OF ILLINOIS;**     ) | |
| **KAREN MORANSKI, Associate**   ) | |
| **Vice-Chancellor, in her Official** ) | |
| **and Individual Capacity;**      ) | |
| **JONATHAN GOLDBERGBELLE,** ) | |
| **Senior Director of International** ) | |
| **Programs and Internships, in his** ) | |
| **Official and Individual Capacity;** ) | |
| **LAURA ALEXANDER, Senior**    ) | |
| **Director Human Resources, in her** ) | |
| **Official and Individual Capacity;** ) | |
| **DONNA MCNEELY, Executive**    ) | |
| **Director of the University Ethics** ) | |
| **and Compliance Office, in her**   ) | |
| **Official and Individual Capacity,** ) | |
|        ) | |
|     **Defendants.**     ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

This cause is before the Court on the Motion to Dismiss

Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P.

12(b)(1) and 12(b)(6) (d/e 36) filed by Defendants Board of Trustees of the University of Illinois, Karen Moranski, Jonathan GoldbergBelle, Laura Alexander, and Donna McNeely. The Motion is GRANTED IN PART and DENIED IN PART. Counts II, III, and IV are dismissed without prejudice and with leave to replead. Plaintiff Jacqueline Tanner is also granted leave to file an amended complaint clarifying which Defendant(s) are named in which counts. Counts I, V, and VI remain. This ruling also resolves Defendants' Motion to Dismiss Plaintiff's Complaint (d/e 19).

## I. JURISDICTION

This Court has subject matter jurisdiction because Plaintiff's claims are based on federal law: Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.; 42 U.S.C. § 1983; 42 U.S.C. § 1985; and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). The Court has supplemental jurisdiction over the State law claim pursuant to 28 U.S.C. § 1367. Venue is proper because a substantial part of

the events or omissions giving rise to Plaintiff's claims occurred in this district.  28 U.S.C. § 1391(b)(2).

## II. LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint.  <u>Christensen v. Cnty. of Boone, Ill.</u>, 483 F.3d 454, 458 (7th Cir. 2007).  To state a claim for relief, a plaintiff need only provide a short and plain statement of the claim showing she is entitled to relief and giving the defendants fair notice of the claims.  <u>Tamayo v. Blagojevich</u>, 526 F.3d 1074, 1081 (7th Cir. 2008).

When considering a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepting all well-pleaded allegations as true and construing all reasonable inferences in plaintiff's favor.  <u>Id.</u>  However, the complaint must set forth facts that plausibly demonstrate a claim for relief.  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 547 (2007).  A plausible claim is one that alleges factual content from which the Court can reasonably infer that the defendants are liable for the misconduct alleged.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  Merely reciting the elements of a cause

of action or supporting claims with conclusory statements is insufficient to state a cause of action.  Id.

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move for dismissal of a claim for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  When considering a Rule 12(b)(1) motion, this Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff.  Alicea-Hernandez v. Catholic Bishop of Chi., 320 F.3d 698, 701 (7th Cir. 2003).  However, the plaintiff bears the burden of proving the jurisdictional requirements have been met.  Ctr. For Dermatology & Skin Cancer Ltd. v. Burwell, 770 F.3d 586, 588 (7th Cir. 2014).

## III. FACTS

On December 1, 2017, Plaintiff filed her Second Amended Complaint against the Board of Trustees of the University of Illinois (the University); Karen Moranski, the Associate Vice-Chancellor of Undergraduate Education at the University of Illinois—Springfield (UIS); Jonathan GoldbergBelle, the Senior Director of International Programs and Internships at UIS; Laura Alexander, the Senior Director of Human Resources at UIS; and Donna McNeeley, the

Director of the University Ethics and Compliance Office at UIS. The claims against the individuals are brought against them in both their official and individual capacities.

The Second Amended Complaint contains the following allegations, which the Court accepts as true for purposes of the motion to dismiss. <u>Tamayo</u>, 526 F.3d at 1081.

On August 16, 2011, Plaintiff began her employment with the University as a part-time adjunct instructor in the Intensive English Program (IEP). The IEP provides high quality teaching of English to speakers of other languages. The goal is to provide non-native speakers the skills they need to study at an American university.

Plaintiff was first hired by Dana Atwell, Associate Director ESL Coordinator, who remained her immediate supervisor until about June 2013. From July 2013 through April 27, 2016, Driss El-Akrich (El-Akrich) was Interim Director of IEP and her immediate supervisor. Plaintiff alleges that El-Akrich made complaints of discrimination and suffered from discrimination and retaliation. El-Akrich has also filed a lawsuit in this Court, Case No. 17-3041.

In January 2014, Plaintiff informed El-Akrich, who informed the Dean, that Plaintiff had been offered a full-time ESL lecturer position with benefits at another university. On January 16, 2014, Plaintiff was promoted to a full-time faculty position with benefits, given a raise, and rehired as a Visiting Clinical Instructor for a 12-month term with allowable vacations. She was given extra responsibilities to develop the policies and procedures necessary to obtain accreditation from the Commission on English Language Program (CEA). Plaintiff was given these extra responsibilities due to her qualifications and expertise gained in previous employment. The University planned to obtain CEA accreditation for the IEP and to meet the same standards as the IEP/ESL Programs at the University's Chicago and Urbana campuses.

During Plaintiff's employment, and due to efforts by El-Akrich, the IEP enrollment grew from about 8-10 students to about 55-60 students per semester within about two years. Many of these students were from Saudi Arabia. In 2014, it was decided by the Dean, with the support and approval of the Provost and Vice-Chancellor, Lynn Pardie (Provost), that the IEP should seek CEA accreditation. Based on the growth of the IEP and the effort to

obtain CEA accreditation, the Dean requested that three full-time faculty be hired.  This request was approved.

On July 1, 2015, the IEP underwent a reorganization and Defendant GoldbergBelle became El-Akrich's immediate supervisor.  However, El-Akrich, as Interim Director of IEP, remained Plaintiff's immediate supervisor.  Prior to the reorganization, GoldbergBelle conducted an assessment of IEP.  GoldbergBelle conducted an assessment interview with Plaintiff and focused on student attendance.  Plaintiff explained to GoldbergBelle that El-Akrich followed the same guidelines as had his predecessor, Atwell: When students missed classes, all teachers reported these absences to El-Akrich.  If there was an issue and El-Akrich was not able to contact the student, he would ask the International Student Services (ISS) for assistance.  Plaintiff also explained to GoldbergBelle that CEA guidelines for assessing students were based on direct evidence demonstrating how well a student met the student's learning outcomes in a given course or at a given level, not attendance.

On August 3, 2015, Plaintiff met with Defendant Moranski and reported discriminatory behavior by GoldbergBelle and his

Program Coordinator, Barbara Sykes, against exchange students in the Proyecta program from Mexico and discriminatory behavior against El-Akrich. The Proyecta program was a short-term program for Mexican students to come to the University for a month to study English. Plaintiff reported that it was her opinion that GoldbergBelle was treating El-Akrich very differently than his white, female predecessor and that it was her opinion that such treatment was based upon El-Akrich's national origin, race, and religion. Moranski did not investigate the complaint of discrimination.

On October 21, 2015, Plaintiff reported discrimination against Middle Eastern/Arab Muslim students by GoldbergBelle and by two IEP adjunct teachers to Ms. Lucia Vasquez, the Assistant Dean of the College of Liberal Arts and Sciences. Specifically, Plaintiff reported that:

- GoldbergBelle was fixated on student absences, specifically those of Middle Eastern/Arab Muslim students and insisted that teachers report such absences directly to him, not to El-Akrich, which was in

contravention of the practices of IEP and the CEA guidelines.

- GoldbergBelle made statements about a Middle Eastern/Arab Muslim student who, because of his absences from one of the classes, should be deported, despite GoldbergBelle's lack of concern for two Chinese students who did not attend classes for almost a semester.

- Sue Alexander and Rebecca Damery, adjunct faculty in IEP, only reported student absences to GoldbergBelle. El-Akrich was not informed of this arrangement and, therefore, was not informed of student absences.

- GoldbergBelle treated El-Akrich very differently than his white, female predecessor Atwell, including keeping El-Akrich out of the information loop necessary for him to perform his duties as Interim Director.

- There was a disparity between the grades and progression reports received by two Middle Eastern/Arab Muslim students and a female Vietnamese student in Sue Alexander's class. All three

students had failing grades in Sue Alexander's class, but Sue Alexander had promoted the Vietnamese student up to the next level and not the Middle Eastern/Arab Muslim students. All three students, based on their test grades, should have moved up to the next level.

- Damery refused to allow a Middle Eastern/Arab Muslim student to attend her class, even though he was on her class roster. She ordered him to leave her class and to bring a note from the IEP office to verify that he was correctly placed in her class, knowing that there would be no staff in the IEP office. On the same day, Damery allowed a female Chinese student to remain in class, even though there was a question as to whether this student was placed at the correct class level.

When Moranski found out that Plaintiff had spoken to Vasquez in the Dean's office, Moranski became angry. Moranski told El-Akrich that Plaintiff should not have gone outside the chain of command. On November 11, 2015, Moranski came to Plaintiff's office. Plaintiff apologized for going out of the chain of command,

and reported the incidents of discrimination. Plaintiff specifically said that "Saudi students were being targeted."

On November 13, 2015, students came to Plaintiff's office to complain about treatment by certain IEP faculty, including Sue Alexander and Damery. Plaintiff took notes and sent the notes to El-Akrich.

On November 24, 2015, El-Akrich reported the students' complaints of discrimination to Moranski and GoldbergBelle during a scheduled bi-weekly meeting. El-Akrich also raised concerns about the inexperience of the present IEP faculty not having previously taught in CEA accredited programs, their inability to comprehend the "proficiency" standard regarding the promotion of students in IEP per CEA and student complaints about faculty members. El-Akrich suggested that it would be better for the program if they hired faculty with prior teaching experience in a CEA accredited program. Both GoldbergBelle and Moranski agreed to hire new instructors who had prior experience in teaching in a CEA accredited program for the upcoming term.

In December 2015, El-Akrich asked Plaintiff to draft a preliminary teaching and course schedule for Spring 2016.

GoldbergBelle had insisted that he needed a schedule prior to December 30, 2015, despite schedules normally not being drafted until January. As directed, Plaintiff did not include Sue Alexander or Damery on the schedule.

On December 23, 2015, Plaintiff was informed that Moranski had decided to give Sue Alexander and Damery one course each for the Spring Term. As requested, Plaintiff amended the schedule and sent it to El-Akrich for submission to Moranski and GoldbergBelle.

On February 2, 2016, Plaintiff was told by Moranski that Plaintiff was being promoted to the position of Visiting Academic Coordinator, a position created for Plaintiff that had not existed before. This position was similar to her prior position. She had been informed that one can only stay in the status of visiting clinical instructor for three years. However, the University could retain that person with the visiting status provided they gave her a different title/position.

On February 3, 2016, Plaintiff met with Donna McNeely, Executive Director of University Office of Ethics and Compliance, and Traci Roth, Associate Director of Ethics and Compliance, at

McNeely's request.  Plaintiff reported the discrimination against Middle Eastern/Arab Muslim students by Sue Alexander, Damery, and GoldbergBelle.  Plaintiff also stated that the complaints had been previously reported to Moranski and GoldbergBelle. Additionally, Plaintiff informed McNeely about the discrimination against El-Akrich by GoldergBelle and his staff.  Plaintiff stated that she had reported this discrimination to Vazquez in the Dean's office and Moranski.

Plaintiff was not informed until March 3, 2016 that the meeting with McNeely concerned allegations of retaliation against her and El-Akrich by Sue Alexander and Damery.

On February 5, 2016, Plaintiff was informed that her contract was ready.  Linette Hughes, Business Administrative Associate for the Center for Academic Success, told Plaintiff that she must sign the document and fax it in the same day or lose all her benefits. The contract was for a shortened seven-month term (January 16, 2016 – August 15, 2016), instead of a twelve-month term.  It also did not include a raise, despite the fact that Plaintiff was promoted to an Academic Coordinator and given more responsibilities.

On February 29, 2016, Plaintiff met with Moranski and GoldbergBelle. They handed her a letter stating that McNeely had found her guilty of retaliation and that she was being placed on administrative leave effective immediately.[1] She was told to hand in her University credit cards and keys to her office. She was told to leave the campus and to have no contact with anyone from the University, including her supervisor. Plaintiff was told she would have a chance to refute the charges in a meeting in three days with the Director of Human Resources, Defendant Laura Alexander, and Moranski. However, Plaintiff was not provided any information regarding the nature of the charges.

On March 3, 2016, Plaintiff met with Alexander and Moranski. She was informed that Sue Alexander, Damery, and Sarah Jones claimed Plaintiff retaled against each of them because they had not been on the preliminary draft of the Spring 2016 schedule that Plaintiff had drafted as directed. They also claimed retaliation because their hours were reduced in the final

---

[1] The Court notes that the letter is attached to the Second Amended Complaint as Exhibit E, but does not state that McNeely had made any findings, in contradiction to the allegations contained in the paragraph 57 of the Second Amended Complaint.

schedule.  Plaintiff had believed that the preliminary schedule was not supposed to be shared with the staff and should have only been seen by Moranski, GoldbergBelle, and El-Akrich.  Plaintiff did not have authority to offer, change terms or sign contracts, she only drafted the schedules according to instructions from El-Akrich.

Plaintiff was not given meaningful notice about the allegations against her prior to the meeting and was unable to provide an effective defense.  During the meeting, Alexander's questions to Plaintiff only concerned El-Akrich and what he had said and done.  Plaintiff also informed Alexander about the Middle Eastern/Arab Muslim students' complaints against Sue Alexander and Damery.

On March 18, 2015, Plaintiff received an email from Moranski containing Alexander's recommendation letter that Plaintiff had retaliated against the adjuncts Sue Alexander and Damery.  One of the options recommended was immediate termination.

On March 21, 2016, Plaintiff orally reported to Deanie Brown, Associate Chancellor, Office of Access and Equal Opportunity, about the discrimination against El-Akrich by GoldbergBelle, the

discrimination against the Middle Eastern/Arab Muslim students, and the retaliation claim brought against her for reporting the discrimination. On March 22, 2016, Plaintiff sent Brown an email containing these claims of discrimination.

On April 15, 2016, Plaintiff again met with Brown. Plaintiff was still on administrative leave. Plaintiff told Brown that she was considering filing a complaint with the EEOC. Brown asked her not to file a formal complaint while Brown advocated to remedy Plaintiff's situation.

On April 27, 2016, Plaintiff received a letter from Moranski stating she could return to work in a limited capacity until the end of her contract. However, she was not cleared of any wrongdoing, she could not return to IEP, she could not speak to any IEP students, faculty, or staff, and her contract would not be renewed.

From May 4, 2016 to August 15, 2016, Plaintiff was directed/allowed to work in the College of Business and Management from home.

On August 2, 2016, Plaintiff was allowed into her former office to collect her personal belongings. Many of Plaintiff's

personal belongings were missing.  Plaintiff filed a police report regarding the theft of personal property.

The wrongful ethics violation on Plaintiff's record has caused significant harm to Plaintiff's career and professional reputation. Plaintiff has lost tangible employment opportunities, as major university job applications inquire whether the applicant has ever been a subject of an ethics violation.

Plaintiff has been told that there are rumors in the IEP Department that Plaintiff and El-Akrich were dismissed because of illegal dealings with "Gary" Yuesong Yang, who is a convicted rapist of an ESL student.

Plaintiff was not allowed to apply for the position of Director of IEP at UIS, even though Plaintiff was fully qualified for the position and would have liked to apply.  Plaintiff did apply for two full-time jobs at the College of Business and Management at UIS, but was not considered despite being qualified.

Since August 15, 2016, Plaintiff has been unable to obtain an academic faculty position at the University or at the numerous other universities where Plaintiff has applied.  Plaintiff has been

informed not to contact any previous colleagues at the University, even for references.

Plaintiff was a full-time visiting academic coordinator and then, per Moranski's direction, Plaintiff worked in the College of Business and Management until the expiration of her contract. Later, she worked as an adjunct part-time ESL writing assistant in the College of Business and Management for one semester. This adjunct position is seen as a demotion by prospective employers and has significantly harmed Plaintiff's professional reputation and her career prospects.

After working for the College of Business and Management in the fall of 2016, she was offered a part-time position for January 2017. However, this offer was rescinded after Plaintiff requested her personnel file from the University.

Plaintiff remains without a permanent job and without health insurance and benefits. She has had to go overseas and teach ESL for a short-term assignment. She has suffered emotional distress and loss of professional reputation due to Defendants' actions.

On May 11, 2016, Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights and the EEOC. See

Garcia v. Vill. of Mount Prospect, 360 F. 3d 630, 642 n. 13 (7th Cir. 2004) (recognizing that, under the dual filing system, filing a charge with the EEOC is "considered to be a filing with the corresponding state agency, and vice versa").  Plaintiff alleged that she was retaliated against for opposing discrimination on November 16, 2015[2] and February 3, 2016.  Plaintiff alleged that on February 29, 2016, Moranski subjected her to unequal terms and conditions of employment by placing her on administrative leave, not allowing her to teach, taking away her duties, and banning her from campus and student contact.  Plaintiff received a Right to Sue Letter on November 21, 2016.

In December 2017, Defendants filed their Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (d/e 36).  On January 31, 2018, Plaintiff filed her response (d/e 39).  Plaintiff has also filed a "Proffer of Additional Facts in Support of Plaintiff's Claims" as Exhibit A to her Response to Defendants' Motion to Dismiss.  Plaintiff has cited no authority for the Court to consider such supplemental facts

---

[2] The charge says the date "November 16, 2016," but the parties agree that this is a typographical error and should be "November 16, 2015."

when ruling on a motion to dismiss.  Nonetheless, the Court does

not find them relevant to the analysis and will not address them

## IV. ANALYSIS

### A.     Defendants' Motion to Dismiss Count I, The Title VII
###        Retaliation Claim, is Denied.

Count I of Plaintiff's Second Amended Complaint is brought

under Title VII and alleges that the University retaliated against

Plaintiff for opposing unlawful employment discrimination.

Defendants move to dismiss this Count on numerous grounds.

Defendants move to dismiss Count 1 on the grounds that it

cannot be brought against individual defendants and punitive

damages cannot be sought.  In response, Plaintiff states that the

claims are not brought against the individual defendants and that

punitive damages are not sought on this Count.  The Court finds

that it is not clear which defendants Count I is brought against in

the Second Amended Complaint, but Plaintiff is granted leave to

clarify this in her Third Amended Complaint.

Defendants also move to dismiss this count on the grounds that Plaintiff failed to exhaust her administrative remedies.[3] Before filing a Title VII lawsuit, a plaintiff must exhaust her administrative remedies by filing a timely charge with the EEOC and receiving a right to sue letter.  Doe v. Oberweis Dairy, 456 F.3d 704, 708 (7th Cir. 2006).  A plaintiff may not bring claims in a lawsuit under Title VII that were not included in the charge of discrimination.  Peters v. Renaissance Hotel Operating Co., 307 F.3d 535, 550 (7th Cir. 2002).  This exhaustion requirement gives the EEOC and the employer a chance to settle the dispute and also gives the employer notice of the employee's grievances.  Huri v. Office of the Chief Judge of the Circuit Court of Cook Cnty., 804 F.3d 826, 831 (7th Cir. 2015).

_____

[3] Although the failure to exhaust is an affirmative defense, dismissal under Rule 12(b)(6) is appropriate where the plaintiff pleads facts sufficient to establish the defense.  See Mosely v Bd. of Educ. of City of Chi., 434 F.3d 527, 533 (7th Cir. 2006) (failure to exhaust is an affirmative defense); Hollander v. Brown, 457 F.3d 688, 691 n.1 (7th Cir. 2006) (dismissal based on an affirmative defense proper where the plaintiff alleges facts sufficient to establish the defense).  Plaintiff has attached the charges of discrimination to the complaint. See Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

The University argues that Plaintiff's charge of discrimination only references the dates of November 15, 2015, February 3, 2016, and February 29, 2016 and that the allegations only reference Moranski and no other individual defendants. Accordingly, the Defendants argue that Plaintiff has failed to exhaust her remedy as to any other individual defendants. In response, Plaintiff has pointed out that Count I has only been brought against the University and not individual defendants. Defendants also move to dismiss "claims not referenced" in the charge of discrimination, but do not list any other specific claims that they believe are improperly included in the Second Amended Complaint. Therefore, the Court will not strike any allegations for failure to exhaust administrative remedies.

Finally, the University argues that Count I should be dismissed because Plaintiff's Title VII retaliation claim fails to state a claim. The University asserts that Plaintiff fails to allege she engaged in a statutorily protected activity because opposing discrimination against students does not constitute opposing unlawful employment discrimination and is not a statutorily protected activity under Title VII. Additionally, the University

argues that Plaintiff has failed to assert sufficient facts to establish that her termination of employment was casually connected to a protected activity.

Plaintiff is not required to plead her claim with the level of specificity suggested by Defendant. Even after the United States Supreme Court's decisions in Twombly and Iqbal—requiring a complaint contain sufficient detail and that the allegations plausibly suggest that the plaintiff has a right to relief—the Seventh Circuit has "reaffirmed the minimal pleading standard for simple claims of" illegal discrimination. Tamayo, 526 F.3d at 1084 (involving sex discrimination) (citing E.E.O.C. v. Concentra Health Servs., Inc., 496 F.3d 773, 781-82 (7th Cir. 2007)). That is, a complaint alleging discrimination on the basis of race, color, religion, sex, or national origin need only allege that the employer instituted a specified adverse employment action against the plaintiff on the basis of race, color, religion, sex, or national origin. See Tamayo, 526 F.3d at 1084; Concentra, 496 F.3d at 781-82 (providing that "once a plaintiff alleging illegal discrimination has clarified that it is on the basis of her race, there is no further information that is both easy to provide and of clear critical

importance to the claim"). Moreover, a plaintiff need not plead a prima facie case under <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), to state a claim. See <u>Luevano v. Wal-Mart Stores, Inc.</u>, 722 F.3d 1014, 1028 (7th Cir. 2013).

Under Title VII, it is unlawful to retaliate against an employee because she has opposed a practice that Title VII forbids or because she has filed a charge with the EEOC. <u>See</u> 42 U.S.C. § 2000e-3(a); <u>Burlington N. and Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 60 (2006). To plead a retaliation claim, Plaintiff must allege that she engaged in a statutorily protected activity and that she was subjected to an adverse employment action as a result. <u>See Luevano v. Wal-Mart Stores, Inc.</u>, 722 F.3d 1014, 1029 (7th Cir. 2013).

Plaintiff agrees that reporting discrimination on behalf of students is not a statutorily protected activity under Title VII. <u>See Hatcher v. Bd. of Trs. of S. Ill. Univ.</u>, 829 F.3d 531, 537 (7th Cir. 2016) (finding that the plaintiff's act of reporting sexual harassment on behalf of a student who was not an employee of the school is not statutorily protected activity under Title VII), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Ortiz v. Werner Enter., Inc.</u>, 834

F.3d 760, 765 (7th Cir. 2016) (holding that the "convincing mosaic" is not a legal test and overruling Hatcher, and other cases, for its treatment of "convincing mosaic" as a legal requirement). Plaintiff asserts, however, that she has also alleged that she reported that University administrators and employees discriminated against her supervisor El-Akrich and that she reported that discrimination through the chain of command in IEP and to others at the University.

The University also argues that there is no causal relationship between her termination and a protected activity because Plaintiff acknowledges that her contract expired and it was not renewed due to a claim of retaliation against her. However, Plaintiff also alleges that the claim of retaliation against her was in retaliation for opposing unlawful discrimination against her supervisor.

Viewing the allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has adequately alleged a retaliation claim by alleging that she opposed unlawful discrimination against her supervisor, that she was retaliated against for opposing that discrimination, and that retaliation included an adverse

employment action.  Therefore, Plaintiff states a claim for retaliation in Count I.

**B.    Motion to Dismiss Count II, the § 1983 Procedural Due Process Claim, is Granted.**

Count II of Plaintiff's Second Amended Complaint alleges Defendants Moranski, GoldbergBelle, Alexander, and McNeely violated the Fourteenth Amendment of the U.S. Constitution and 42 U.S.C. § 1983 by violating her procedural due process rights. To allege a due process violation, Plaintiff must show that (1) she had a property interest;" and (2) that she was deprived of this interest without due process of law." Krieg v. Seybold, 481 F.3d 512, 519 (7th Cir. 2007).  Plaintiff alleges she had a property interest in her continued employment at the University and that the individual Defendants deprived her of this property interest by placing her on administrative leave and banning her from campus, from all facilities, and from contact with faculty, staff, and students of the IEP Department.

Defendants move to dismiss Count II on numerous grounds. Defendants move to dismiss this Count against the University on two grounds.  However, as Plaintiff notes, this Count is not

brought against the University so these arguments are denied as moot.  <u>See</u> Sec. Amend. Compl. ¶ 88.

Next, Defendants argue that, to the extent Count II is directed against the individual defendants in their official capacity, the claim is barred by sovereign immunity.  Plaintiff agrees that Count II is only brought against the individual defendants in their individual capacity.  <u>See</u> Sec. Amend. Compl. ¶ 88.  However, the caption of the case asserts that claims are brought against the individual defendants in their individual and official capacities.  Plaintiff is granted leave to amend to clarify the caption.

Defendants argue that the § 1983 claim against the individual defendants in their individual capacity is also barred by sovereign immunity because any "judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act."  Def. Mem. at 9 (quoting <u>Luder v. Edicott</u>, 253 F.3d 1020, 1023 (7th Cir. 2001)).

As Defendants correctly note, an individual capacity suit is barred by sovereign immunity when the claim is really and substantially against the State.  <u>Luder</u>, 253 F.3d at 1023.  An

individual capacity lawsuit is substantially against the State when the judgment would result in the judgment being paid by the State rather than the individual defendants, such as where the plaintiff seeks backpay and other monetary compensation based on an employment contract. Omosegbon v. Wells, 335 F.3d 668, 673 (7th Cir. 2003) (finding, in § 1983 case, that the claim was really one against the State where the plaintiff sought "backpay and other forms of monetary compensation based on an employment contract" and the individuals were not parties to the contract in their individual capacities); Altman v. Dep't of Children & Family Servs., 666 F. Supp. 2d 918, 929 (S.D. Ill. 2009) (finding, in § 1981 case, that the claim was really one against the State where the plaintiff sought new supervisors and reversal of discriminatory action, relief that was only available from the State); Harden v. Bd. of Trs. E. Ill. Univ., No. 12-CV-2199, 2013 WL 6248500, at *9 (C.D. Ill. Dec. 2, 2013) (finding, in § 1981 case, that the plaintiff sought monetary compensation based on the employment contract and, therefore, the claim was not a bona fide individual capacity suit but one seeking relief that would "expend itself on the public treasury").

Here, Plaintiff seeks damages associated with her employment contract with the University, which would necessarily be paid by the State rather than the individual defendants. Sec. Am. Compl. ¶ 94 (alleging loss of past income and benefits). However, Plaintiff also seeks emotional distress damages. Id. (alleging emotional distress, humiliation, and embarrassment). Damages for emotional distress, humiliation, and embarrassment are available for a § 1983 claim. See Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 307 (1986) (recognizing the availability of compensatory damages, such as impairment of reputation, personal humiliation, and mental anguish and suffering, under § 1983). These damages do not stem from Plaintiff's employment contract with the University and the Defendants have not presented any arguments why the individual defendants would not be liable for these types of damages. See generally, Kentucky v. Graham, 473 U.S. 159, 166 (1985) ("[A]n award of damages against an official in his personal capacity can be executed only against the official's personal assets."). Therefore, at this juncture, the Court will not dismiss the individual capacity claims on the ground that the claim is substantially against the State.

Defendants also move to dismiss Count II on the grounds that Plaintiff has not alleged sufficient facts to show she had a property interest in her continued employment or that individual defendants were personally involved in the violation. Additionally, Defendants raise the defense of qualified immunity.

The Court agrees that Plaintiff has not alleged a property interest in her job. Whether a property or liberty interest exists is a threshold question in a due process challenge. Citizens Health Corp. v. Sebelius, 725 F.3d 687, 694 (7th Cir. 2013). Protectable property interests must be legitimate claims of entitlement, and can "arise from a contract, a statute, or a regulation, provided the source of the claim is specific enough to require the provision of the benefit on a nondiscretionary basis. Id., citing Khan v. Bland, 630 F.3d 519, 528-29 (7th Cir. 2010).

"A property interest in continued employment can be created in one of two ways, 1) by an independent source such as state law securing certain benefits; or 2) by a clearly implied promise of continued employment." Palka v. Shelton, 623 F.3d 447, 452 (7th Cir. 2010) citing Phelan v. City of Chicago, 347 F.3d 679, 681 (7th Cir.2003) (internal quotation marks omitted). "Due-process claims

in the context of public employment require an entitlement to continued employment; more specifically, the plaintiff must have a legitimate claim of entitlement not to lose a valuable governmental benefit except for cause." Palka, 623 F.3d at 452, citing Lee v. Cnty of Cook, 862 F.2d 139, 141 (7th Cir. 1988).

"[A] loss of position that impedes future job opportunities or has other indirect effects on future income can inflict an actionable deprivation of property." Head v. Chicago Sch. Reform Bd. of Trustees, 225 F.3d 794, 803 (7th Cir. 2000). An employee has a property interest in completing her contract in accordance with the terms of her contract when a contract or statute provides that she can be removed only on limited grounds. See Id. (removing plaintiff from his position as principal before the end of his contract deprived him of a property interest in continuing in that position for the term of his contract); Grady v. Bd. of Trustees of N. Illinois Univ., 78 F. Supp. 3d 768, 778 (N.D. Ill. 2015) (plaintiff stated a cause of action by alleging his suspension caused him to suffer significant indirect economic effects).

Plaintiff wisely concedes that she did not have a property interest in continued employment beyond August 2016. However,

she argues that by alleging that she had a contract with the University for the position of Visiting Academic Coordinator from January 2016 to August 2017, that she has alleged that she had a property interest in not being placed on administrative leave and to complete her term as an academic coordinator in the IEP Department until the end of her contract term.  See Sec. Amend. Compl. ¶ 90.  However, a contract for a specified term is not by itself sufficient to show a property interest in a job.  Plaintiff must also show that her interest in the job could not be lost except for cause.  Without such a showing, Plaintiff has not alleged a property interest in her continued employment through August 2016.  Therefore, the Court dismisses Count II on this basis.

Defendants also raised lack of personal involvement and qualified immunity.  Because the Court finds that Count II fails to state a claim, the Court will not address Defendants' involvement or qualified immunity arguments.  The Court will grant Plaintiff leave to amend Count II.  Plaintiff is advised that if she does so, and Defendants again raise qualified immunity, she bears the burden of demonstrating that she has asserted a violation of a constitutional right with respect to Count II and that the right was

clearly established at the time in question.  <u>Levenstein v.</u>
<u>Salafasky</u>, 164 F.3d 345, 351 (7th Cir. 1998).

**C.    Defendants' Motion to Dismiss Count III, the § 1983
Claim Alleging First Amendment Retaliation, is
Granted.**

In Count III, Plaintiff brings a claim under 42 U.S.C. § 1983.
Plaintiff alleges that she reported complaints about discrimination
against Middle Eastern/Arab Muslim and Mexican students and
against her supervisor El-Akrich and that Defendants retaliated
against her for making the complaints.

Defendants move to dismiss Count III on numerous grounds.
First, Defendants argue that the § 1983 First Amendment
retaliation claim against the individual defendants in their official
capacities is barred by sovereign immunity.  Plaintiff agrees,
stating that she has only pled Count III against the defendants in
their individual capacities.  <u>See</u> Sec. Amend. Compl. ¶ 98.
However, the caption of the case asserts that claims are brought
against the individual defendants in their individual and official
capacities.  Plaintiff is granted leave to amend to clarify the
caption.

Second, Defendants argue that the § 1983 claim against the individual defendants in their individual capacities is also barred by sovereign immunity for the same reason raised in response to the § 1983 claim regarding procedural due process. For the same reasons this Court articulated with regard to Plaintiff's § 1983 procedural due process claim, the Court finds that the § 1983 first Amendment retaliation claim is not really and substantially against the State. See Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 307 (1986) (recognizing the availability of compensatory damages, such as impairment of reputation, personal humiliation, and mental anguish and suffering, under § 1983).

Third, Defendants argue that Count III fails to state a claim because Plaintiff has not plausibly alleged that her speech was made in her capacity as a private citizen instead of in her role as a UIS employee. The Court agrees.

A public employee's speech is constitutionally protected if the speech was made as a private citizen and addressed a matter of public concern. Forgue v. City of Chi., 873 F.3d 962, 966 (7th Cir. 2017). Whether speech is constitutionally protected is a question of law. Id.

"A public employee does not speak as a citizen when he speaks pursuant to his official duties." <u>Roake v. Forest Pres. Dist. of Cook Cnty.</u>, 849 F.3d 342, 346 (7th Cir. 2017) (internal quotation marks omitted) (citing <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 417 (2006)).  To determine whether an employee was acting as a citizen, the Court examines the duties the employee is expected to perform and determines whether the speech "'owes its existence to a public employee's professional responsibilities.'" <u>Callahan v. Fermon</u>, 526 F.3d 1040, 1044 (7th Cir. 2008) (quoting <u>Garcetti</u>, 547 U.S. at 421).  Plaintiff must plead specific facts that plausibly suggest that her speech was made as a private citizen and not in her capacity as Visiting Academic Coordinator at IEP. <u>See</u> <u>Hatcher</u>, 829 F.3d at 538.

Plaintiff has not plausibly alleged that she made the complaints about discrimination against the students and El-Akrich as a citizen rather than as a public employee speaking pursuant to her official duties.  An employee's speech about misconduct affecting an area within her responsibility is considered to be made pursuant to her employment even when she is not strictly required to make it.  <u>Hatcher</u>, 829 F.3d at 539

(finding that the professor plaintiff was speaking in her faculty role when she reported sexual harassment against a student where she did not explain why she felt compelled to report the misconduct apart from the fact that she was a professor and believed it was her job to do so).

In this case, Plaintiff essentially alleges that she was reporting misconduct in an area within her responsibility as Visiting Clinical Instructor/ Visiting Academic Coordinator. Plaintiff alleges that in addition to instruction, she was responsible for developing the policies and procedures necessary to obtain accreditation from CEA. She made some of the complaints about conduct of adjunct professors, her superiors, and IEP support staff through the chain of command in her department and within other official University channels. These complaints concerned not only discrimination, but potentially deviating from the CEA policies and procedures she was in charge of implementing because of alleged discrimination. As such, Plaintiff alleges she spoke as a public employee and not as a private citizen. See Roake, 849 F.3d at 346 (finding the police officer plaintiff had not plausibly alleged that he made complaints as a citizen when he shared the complaints only

with his employer and the complaints focused exclusively on official misconduct by his fellow officers); Kubiak v. City of Chi., 810 F.3d 476, 482 (7th Cir. 2016) (affirming dismissal of First Amendment retaliation claim, finding the allegations did not demonstrate that police officer plaintiff spoke as a citizen when she complained about being verbally assaulted by a coworker because her speech was intimately connected with her professional duties and she attempted to use official internal channels to report the misconduct). Therefore, the Court finds that Plaintiff has failed to state a claim in Count III.

As with the § 1983 procedural due process claim, Defendants also raised qualified immunity. Because the Court finds that Count III also fails to state a claim, the Court will not address Defendants' qualified immunity argument. The Court will grant Plaintiff leave to amend Count III. Plaintiff is again advised that if she does so, and Defendants again raise qualified immunity, she bears the burden of demonstrating that she has asserted a violation of a constitutional right with respect to Count III and that the right was clearly established at the time in question. Levenstein, 164 F.3d at 351.

**D.    Defendants' Motion to Dismiss Count IV, the § 1985 Conspiracy Claim, is Granted.**

In Count IV, Plaintiff brings a claim pursuant to 42 U.S.C. § 1985(3).  Section 1985(3) prohibits conspiracies to deprive a person of equal protection under the law where the conspiracy is motivated by "racial or other class-based discriminatory animus." Smith v. Gomez, 550 F. 3d 613, 617 (7th Cir. 2008).

Plaintiff alleges that Defendants Moranski, GoldbergBelle, Alexander, and McNeely reached an agreement to remove Plaintiff from her position as Visiting Academic Coordinator in the IEP at the University, on or about November 11, 2015, in violation of Plaintiff's constitutional rights.  Plaintiff alleges that the Defendants committed overt acts and that their conduct was objectively unreasonable and undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

Defendants argue that Plaintiff's §1985(3) must be dismissed pursuant to the intracorporate conspiracy doctrine.  A conspiracy requires more than one person be involved in depriving the plaintiff of her rights or privileges.  Xiong v. Wagner, 700 F.3d 282, 297 (7th Cir. 2012).  The intracorporate conspiracy doctrine holds that

"a conspiracy cannot exist solely between the members of the same entity." Payton v. Rush-Presbyterian-St. Luke's Med. Ctr. 184 F.3d 623, 633 (7th Cir. 1999). That is, "managers of a corporation jointly pursuing its lawful business do not become 'conspirators' when acts within the scope of their employment are said to be discriminatory or retaliatory." Travis v. Gary Cmty. Mental Health Ctr., Inc., 921 F.2d 108, 110 (7th Cir. 1990) (citing Dombrowski v. Dowling, 459 F.2d 190, 196 (1972)).

This intracorporate conspiracy doctrine is not limited to managers, however, and applies to supervisors and subordinates working in the corporation's interest. Payton. 184 F.3d at 633. The Seventh Circuit has also extended the intracorporate conspiracy doctrine to governmental entities. Wright v. Ill. Dep't of Children & Family Servs., 40 F.3d 1492, 1508 (7th Cir. 1994)

Here, the intracorporate conspiracy applies because the four Defendants are employees of the same entity, the University/UIS, and were acting within the scope of their duties when they allegedly reached an agreement to remove Plaintiff from her position. Therefore, no conspiracy existed.

Plaintiff argues that the personal bias exception to the intracorporate conspiracy doctrine applies. The personal bias exception applies in egregious circumstances where the organization's employees were motivated solely by personal bias. Hartman v Bd. of Trs. of Cmty Coll. Dist. No. 508, 4 F.3d 465, 470 (7th Cir. 1993); Payton, 184 F.3d at 633 (stating that the exceptions to the intracorporate conspiracy doctrine exist in egregious circumstances). When individuals are motivated solely by personal bias, the corporation's interests play no part in the employees' collective action and, therefore, the employees do not act within the scope of their employment. Hartman, 4 F.3d at 470. A frequent example of personal bias noted in court cases is where the "Ku Klux Klan incorporates to avoid conspiracy liability for 'carrying out acts of violence.'" Stone v. Bd. of Trs. of N. Ill. Univ., 38 F. Supp.3d 935, 950 (N.D. Ill. 2014) (quoting Travis, 921 F.2d at 110).

Plaintiff's complaint contains no allegations to plausibly suggest that Defendants were solely motivated by personal bias. Stone, 38 F. Supp. 3d at 950 (finding no plausible suggestion that the defendants were motivated solely by selfishness as opposed to

the business of the running the university). Therefore, the Court will grant the Motion to Dismiss Count IV but grants Plaintiff leave to replead.

As with the § 1983 claims, Defendants also raised qualified immunity. Because the Court finds that Count IV also fails to state a claim, the Court will not address Defendants' qualified immunity argument. The Court will grant Plaintiff leave to amend Count IV. Plaintiff is again advised that if she does so, and Defendants again raise qualified immunity, she bears the burden of demonstrating that she has asserted a violation of a constitutional right with respect to Count IV and that the right was clearly established at the time in question. Levenstein, 164 F.3d at 351.

## E.   Defendants' Motion to Dismiss Count V, the Title VI Retaliation Claim, is Granted in Part and Denied in Part.

In Count V, Plaintiff brings a retaliation claim under Title VI of the Civil Rights Act of 1964. Title VI of the Civil Rights Act prohibits discrimination on the basis of race by a recipient of federal funds:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.  As Defendants note, the Seventh Circuit has not formally recognized a retaliation claim under Title VI, but other courts have recognized such a claim.  Defs. Mem. at 20 (citing Peters v. Jenney, 327 F.3d 307 (4th Cir. 2003)).

In Count V, Plaintiff alleges that she was retaliated against for opposing a practice made unlawful by Title VI.  Specifically, Plaintiff made complaints about discrimination against Middle Eastern/Arab Muslim students and against her supervisor El-Akrich by University officials and employees.  Plaintiff alleges that her Title VI protected speech was the motivational factor for the retaliation against her, which included being put on administrative leave and banned from the University, although she was eventually allowed to work from home and at the College of Business and Management until her contract expired.

Defendants argue that the individual defendants cannot be sued under Title VI.  Plaintiff agrees that the only proper party in a Title VI suit is the University and that Count V is only brought

against the University.  The Plaintiff is granted leave to amend to clarify that the Count V is only brought against the University.

The University next argues that Count V fails to state a claim for retaliation because Plaintiff's allegations do not support the inference that persons were denied participation in a federally funded program.  However, the plain language of the statute shows that Defendants are incorrect that persons must be <u>denied participation</u> in a federally funded program.  Rather, the statute provides three alternative means of violating the statute: (1) "be excluded from participation in"; (2) "be denied the benefits of"; or (3) "be subjected to discrimination under" any program of activity receiving federal financial assistance.  42 U.S.C. § 2000d.  Plaintiff alleges that she complained that Middle Eastern/ Arab Muslim students were not promoted to the next level when similarly situated non-Middle Eastern/ Arab Muslim students were promoted to the next level.  She also alleges that she complained that Damery refused to allow a Middle Eastern/ Arab Muslim student to attend her class even though he was on her class roster, Damery ordered the student to leave and bring a note from the IEP office, and Damery treated a similarly situated Chinese student

more leniently.  These allegations, at a minimum, are sufficient to allege that Plaintiff complained that Middle Eastern/ Arab Muslim students were "subjected to discrimination" during their participation in IEP.

The University also argues that Count V fails to state a claim for retaliation because the non-renewal of Plaintiff's employment was not related to the report of Title VI discrimination.  The elements of a retaliation claim under Title VI include: (1) that the plaintiff engaged in protected activity; (2) the defendant took a materially adverse employment action against the plaintiff; and (3) a causal connection existed between the protected activity and the adverse action.  Peters, 327 F.3d at 321 (involving a motion for summary judgment).

Some courts have applied the same standard to Title VI retaliation claims as are applied to Title VII retaliation claims. See Bowman v. Baltimore City Bd. of Sch. Comm'rs, 173 F. Supp.3d 242, 247 (D. Md. 2016) ("Title VII and Title VI claims of retaliation are examined under the same standard.").  Without further guidance from the parties, the Court will do the same. Therefore, the Court will deny Defendants' Motion to Dismiss

Count V on this basis for the same reason the court denied
Defendants' Motion on Count I on this basis.  Plaintiff has
sufficient facts to show her alleged advise employment action was
causally related to the alleged protected activity under Title VI.
Therefore, the Motion to Dismiss Count V is granted as to the
individual defendants and otherwise denied.

**F.      Defendants' Motion to Dismiss Count VI, the Illinois**
**Civil Rights State Law Claim, is Granted in Part and**
**Denied in Part.**

In Count VI, Plaintiff brings a claim for retaliation under the
Illinois Civil Rights Act, 740 ILCS 23/5(a).  The Illinois Civil Rights
Act provides:

> (a) No unit of State, county, or local government in
> Illinois shall:
>
> (1) exclude a person from participation in, deny a person
> the benefits of, or subject a person to discrimination
> under any program or activity on the grounds of that
> person's race, color, national origin, or gender; or
>
> (2) utilize criteria or methods of administration that have
> the effect of subjecting individuals to discrimination
> because of their race, color, national origin, or gender.

740 ILCS 23/5(a).

Defendants first argue that the individual defendants are improper defendants under the Illinois Civil Rights Act. Plaintiff does not address this argument, but the Court agrees with Defendants that the plain language of the Illinois Civil Rights Act does not create a cause of action against individuals and therefore dismisses Count VI against the individual defendants. Plaintiff is granted leave to amend this Count to clarify that it is being brought only against the University.

The University next argues that Count VI fails to state a claim because the Illinois Civil Rights Act is modeled after Title VI and the Title VI claim fails to state a claim. Because the Court found that Count V, the Title VI claim, does state a claim for relief, the Court will not dismiss Count VI on this basis.

Finally, the University argues that Count VI should be dismissed because it is duplicative of the Title VI claim. A court may dismiss duplicative claims when the two claims involve the same facts and injury. See, e.g., Barrow v. Blouin, 38 F.Supp.3d 916, 920 (N.D. Ill. 2014). The Court finds, however, that dismissal at this stage would be premature. Although the Illinois Civil Rights Act is based on Title VI (see Weiler v. Vill. of Oak Lawn, 86 F.

Supp. 874, 889 (N.D. Ill. 2015)), one major difference is that a Title VI claim requires that the defendant receive federal financial assistance while the Illinois Civil Rights Act contains no such limitation. Therefore, the two claims contain distinct elements. See, e.g., id. at 890 (declining to dismiss an Illinois Civil Rights Act claim as duplicative of a First Amendment claim where the claims had distinct elements). Count VI is dismissed as to the individual defendants, but the Court will not dismiss Count VI against the University as duplicative of Count V at this time.

## V. CONCLUSION

Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (d/e 39) is GRANTED IN PART and DENIED IN PART. This ruling also resolves Defendants' Motion to Dismiss Plaintiff's Complaint (d/e 19).

(1)     Plaintiff shall file, on or before March 16, 2018, an amended complaint clarifying which Counts are brought against which Defendant(s), including that Counts I, V, and VI are brought only against the University, and clarifying in the caption that no

claims are brought against the individual defendants in their official capacity.

(2)    Counts II, III, and IV are dismissed without prejudice and with leave to replead against the individual defendants in their individual capacity.

(3)    Counts I, V, and VI remain as to the University, but are dismissed without prejudice and without leave to replead against the individual defendants.

(4)    Defendants shall answer or otherwise respond to the amended complaint on or before March 30, 2018.

**ENTERED: March 2, 2018**

**FOR THE COURT:**

*s/Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**